| | |
|---|---|
| LEONARD CAPRA,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER JOHN KNAPP, *et al.*,<br><br>Defendants. | Civ. No. 2:15-3215 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

During his arrest, Leonard Capra ("Plaintiff") claims police officers used excessive force and that the incident stemmed from their municipal employers' failure to train its officers. He now asserts violations under 42 U.S.C. § 1983 and the New Jersey Tort Claims Act against Hackensack Police Officer John Knapp ("Knapp") and Detective Alexander Lopez-Arenas ("Lopez-Arenas") and Bergen County Sheriff's Officer Vincent Surace ("Surace") (collectively, the "Officers"); City of Hackensack (the "City"); County of Bergen (the "County," and together with the Officers and City, "Defendants"); and other fictitious individuals and entities. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367 and decides the matter without oral argument. FED. R. CIV. P. 78(b). For the reasons below, Defendants' motions are **GRANTED**.

I.   BACKGROUND

In a multi-agency investigation that included the Bergen County Sheriff's Office and Hackensack Police Department ("HPD"), Plaintiff sold drugs to an undercover officer. City SOF ¶¶ 8, 12, 19. Once arrested, Lopez-Arenas took custody and, with Knapp and Surace, drove Plaintiff to HPD headquarters for processing. *Id.* ¶¶ 21–22. On the way there, Plaintiff shouted vulgarities, threatening to kill the Officers. Decl. of John Visconi ("Visconi Decl."), Ex. B, Lopez-Arenas Dep. 18:2–14, Jan. 26, 2017, ECF No. 61-2; Visconi Decl., Ex. E, Lopez-Arenas Investigation Report 0112, ECF No. 61-5. Yet, Plaintiff claims he said nothing to the Officers and cannot recall if they said anything to him. *Id.*, Ex. D, Capra Dep. 58:17–60:1, Jan. 12, 2017, ECF No. 61-4. At HPD, the Officers took Plaintiff to a processing room (OD Room), so he could remove his jacket and any prohibited items on him before entering the holding cell. City SOF ¶ 24. As to what happened next, the OD Room's video camera recorded what took place when the parties entered and remained in the OD Room. Barnett Cert., Ex. E, ECF No. 66-5; Visconi Decl., Ex. O, ECF No. 61-15.

1

The OD Room video shows once in the OD Room, Lopez-Arenas uncuffed Plaintiff. Ex. O, 22:42:02–33. Next, per HPD's "Pre-Incarceration Searches" policy, told Plaintiff more than once to remove his jacket and empty his pockets. City SOF ¶¶ 24, 25, 28, 30. Instead, Plaintiff just sat down. Capra Responsive SOF ¶ 32, ECF No. 66-1. So Lopez-Arenas decided to conduct the pre-incarceration search in the holding cell, which involved moving to another room. City SOF ¶ 33. He then approached and placed his hand on Plaintiff to move him, but Plaintiff pulled his arm away. City SOF ¶ 33–34. Noting Plaintiff's "agitated" state, Knapp and Surace also approached him. City SOF ¶ 38; Ex. E, at 0112; Ex. O, at 22:43:08.

Standing next to Plaintiff, Lopez-Arenas and Knapp each grabbed his arms, while Surace positioned himself behind Knapp. Ex. O, at 22:43:12. Plaintiff then stood up with Lopez-Arenas and Knapp holding his arms, as Surace grabbed Plaintiff's waist and jacket. *Id.* at 22:43:13–15. The Officers and Plaintiff are then propelled forward into a desk towards the OD Room doorway, and then Knapp, Surace, and Plaintiff fell to the ground. *Id.* at 22:43:15–18. When Plaintiff fell, his face hit the floor. City SOF ¶ 43. While on the ground, Plaintiff claims someone kicked him in the face but does not identify who kicked him. *Id.* ¶ 47. Yet, Plaintiff asserts from the time he was thrown to the ground to seeing the bruise on his face, he may have "blacked out." Capra Dep., Ex. D, 94:7–22.

After Plaintiff hit the ground, Knapp heard a popping noise. City SOF ¶ 49. He then pulled Plaintiff's left arm from under his body, removed Plaintiff's jacket, and discovered a deformity that required medical attention. *Id.* ¶¶ 50–52. At the hospital, a surgeon diagnosed Plaintiff with a fractured left distal humerus with complete left radial nerve palsy. *Id.* ¶ 53; Barnett Cert., Ex. G, ECF No. 66-2. A medical triage report also noted small bruises on Plaintiff's forehead and lower lip. Barnett Cert., Ex. I.

Defendants now move for summary judgment. First, the Officers argue their conduct was objectively reasonable considering Plaintiff's irrational behavior, failure to follow instructions, and demonstrated physical resistance. And even if they used excessive force, the Officers aver qualified immunity shields them from liability. City Summ. J. Br. 15–23, ECF No. 63; Surace Summ. J. Br. 8–17, ECF No. 64-3. Next, the City and County both claim Plaintiff failed to show how a specific custom or municipal policy was the moving force behind the excessive force violation. City Summ. J. Br. at 6–10; Cty. Summ. J. Br. 11–14, ECF No. 65-7.

Plaintiff opposes, arguing genuine issues of material fact exist as to the reasonableness of the Officers' use of force. Pl.'s Opp'n Br. 8–15, ECF No. 66; Pl.'s Surace Opp'n Br. 5–12, ECF No. 67. And as to the City and County, Plaintiff also asserts a failure to investigate use of force complaints as well as noncompliance with State-mandated use of force reporting and training requirements enabled the constitutional violation. *Id.* at 5–7, ECF No. 66; Pl.'s Cty. Opp'n Br. 5–6, ECF No. 68. In reply, Defendants essentially reiterate their original arguments. *See* City Reply Br. 1–10, ECF No. 69-5; Cty. Reply Br. 6–12, ECF No. 71.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In its review, the Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

Under 42 U.S.C. § 1983, a defendant, acting under color of law, may be sued for deprivation of constitutional or statutory rights. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted). Although subject to suit for on-duty actions, officers may assert qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted).

To decide if qualified immunity applies, the Court will consider: (1) whether Plaintiff presents sufficient facts to show the Officers' conduct violated his constitutional right and (2) whether that right was clearly established at the time of the OD Room incident. *See Saucier v. Katz*, 533 U.S. 194, 201 (2009). To find a "clearly established" right centers on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citation omitted).

### A. The Officers did not use excessive force.

In deciding excessive force claims, a court applies a standard of reasonableness to the incident's facts and circumstances. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness of the Officers' "use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). That is because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

The Officers in the OD Room used an objectively reasonable amount of force. In disregarding Lopez-Arenas' instructions and by physically pulling his arm away, a reasonable officer there could believe that Plaintiff was resisting arrest. More so, Plaintiff admits during the physical encounter he "may have blacked out." Capra Dep. 94:9–14. So it was reasonable when the Officers escalated their response, using necessary force with an intent to conduct the pre-incarceration search in the holding cell. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) ("Authorities must be allowed 'to graduate their responses to the demands of any particular situation.'").

That Plaintiff fell and suffered injury was an unfortunate consequence, but "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's

3

chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S at 396 (citation omitted); *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011). No reasonable factfinder could find otherwise without "engag[ing] in *post hoc* evaluation of police conduct [when one] can almost always imagine some alternative means by which the objectives of the police might have been accomplished." *United States v. Sharpe*, 470 U.S. 675, 686–87 (1985).

### B. Qualified immunity shields the Officers from liability.

Even if the evidence showed the Officers' actions reflected the "hazy border between excessive and acceptable force," qualified immunity still protects them. *See Katz*, 533 U.S. at 206 (internal quotation and citation omitted). A reasonable officer on the scene could also conclude it was objectively reasonable to affect Plaintiff's movement after his actions demonstrated noncompliance. Moreover, Plaintiff provides no case which puts the excessive force question "beyond debate" that the Officers should have known that using a compliance hold in the OD Room crossed the constitutional line. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).[1]

### C. The state-law battery claim against the Officers and City fails.

The New Jersey Tort Claims Act provides that a public entity, like the City, is not liable in tort for employees' actions "constituting a crime, actual fraud, actual malice or willful misconduct." N.J. STAT. ANN. § 59:2–10. The Act provides immunity if the Officers "act[] in good faith in the execution or enforcement of any law." *Id.* § 59:3–3. "The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act." *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000) (citations omitted). As discussed above, Plaintiff's state-law battery claim fails because there lacks an underlying constitutional violation. And in any event, the Officers receive good faith immunity for their objectively reasonable conduct. *See Fielder v. Stonack*, 661 A.2d 231, 246 (N.J. 1995).

### IV. CONCLUSION

For the foregoing reasons, Defendants' summary judgment motions are **GRANTED**. An appropriate order follows.

                                           */s/ William J. Martini*
                                         **WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 23, 2018**

---

[1] Unable to establish an excessive force claim, Plaintiff's derivative municipal liability claims against the City and County fail as well. *See, e.g.*, *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (finding if an officer "inflicted no constitutional injury" then it is implausible to hold the municipality liable); *Vargas v. City of Phila.*, 783 F.3d 962, 974–75 (3d Cir. 2015) ("Because the officers did not violate any of her constitutional rights . . . there was no violation for which the City of Philadelphia could be held responsible." (citation omitted)).